ALLEN AND WOODWARD, Ex's, *v.* SECOND · NATIONAL BANK OF NASHVILLE *et al.*

PARTNERSHIP. *Surviving partner.* Upon the dissolution of a firm by the death of one partner, the surviving partner has no power to assign or pledge the uncollected and undivided assets of the firm, consisting of choses in action due to it, as collateral security for his own pre-existing debt, so as to give his assignee a right superior to the equity of the personal representative of the deceased partner to have the assets applied to the debts of the firm.

---

### FROM DAVIDSON.

---

Appeal from the Chancery Court at Nashville. H. H. LURTON, Ch.

JOHN LELLYETT for complainants.·

JAS. C. BRADFORD for defendants.

McFARLAND, J., delivered the opinion of the court.

The question in this case is, whether, upon the dissolution of a firm by the death· of one partner, the surviving partner may assign or pledge the uncollected and undivided assets of the firm, consisting of choses in action due to it, as collateral security for his· own pre-existing debt, so as to give his assignee a right superior to the equity of the personal representative of the deceased partner to have said assets applied to the debts of the firm.

The complainants are creditors of the firm of Reid, Chadbourn & Co., and have obtained a decree against the members of the firm and the administratrix of a deceased member, which remains in part unsatisfied. At the time the debt was created the firm consisted of three members, Geo. H. Reid, W. H. Chadbourn and J. T. Brown, and was engaged in the business of commission merchants and cotton brokers. Brown retired in the year 1868, and the two remaining members continued the business under the same style until the death of Reid on the 19th of October, 1869. About the 28th of May, 1870, Carrie V. Reid, as administratrix of said Geo. H. Reid, filed her bill in the chancery court at Nashville against said Chadbourn and others, and soon thereafter filed two amended bills, and, by consent, decrees were entered settling the rights of the two partners in respect to the business of the firm. The settlement was made upon what was assumed to be the condition of the firm at the death of Reid. These decrees and the report of a receiver and special commissioner appointed in the case, ascertained the assets and liabilities of the firm and the share that would be due to each partner. This result, however, was liable to be changed in the event the liabilities proved to be greater than as thus ascertained, or by a failure to realize all the assets reported as available. A leasehold interest in a house and lot was, by the decree, turned over to Mrs. Reid at $6,500, and the receiver was directed to collect and pay over to her $4,000 in addition which was subsequently due. The receiver was also directed to col-

lect the uncollected assets, and out of the proceeds pay the debts, and make Chadbourn equal to Mrs. Reid, and distribute the remainder in proportion to their shares in the firm, reserving to each their appropriate equities in the event this equality should be disturbed by either partner being compelled to pay debts of the firm. The leasehold property assigned to Mrs. Reid has been subsequently sold under execution in part satisfaction of the decree due the present complainants, as well as certain bank stock, the individual property of the said Geo. H. Reid. The balance of complainants' decree remains unsatisfied, and the object of their bill is to reach certain assets of the firm, consisting of debts or choses in action due it which at the time remained undistributed, for the satisfaction of the remainder of their decree. These assets are claimed by the Second National Bank, under the following state of facts:

The bank had, during the existence of the firm, discounted drafts drawn upon cotton and other produce, and perhaps had transacted the general banking business of the firm, and at the death of Reid there was a balance due the bank, of which there yet remains upwards of $1,000. After the death of Reid, Chadbourn continued to draw drafts in the name of the firm, which were discounted by the bank until about May, 1870, when the firm of Hooper, Haring & Co., of New York, upon whom the drafts were drawn, failed, and the drafts, or a large number of them, were returned protested, and the result was that a balance thus arose in favor of the bank of about

$50,000. About the 8th of June, 1870, the assets in question were turned over to the bank as collateral to secure this indebtedness, which was styled the indebtedness of the firm of "Reid, Chadbourn & Co.," but which was in reality the indebtedness created after the death of Reid, except the balance of upwards of $1,000 before referred to.

It is claimed by the bank that Mrs. Reid assented to the continuance of the business of the firm after the death of her husband, but the proof fails to show her assent to the transacting of business as actually carried out by Chadbourn. They settled upon a different basis, as before shown, and we think the bank can only stand, in respect to these assets, upon such rights as Chadbourn could confer, and the balance created by the drafts of Chadbourn after the death of Reid must be regarded as the debt of Chadbourn alone. The bank had full notice of the dissolution of the firm, and we do not think Mrs. Reid is shown to have misled the officers of the bank in regard to the transactions in question.

The assets in question were notes due the original firm of Reid, Chadbourn & Co., and still remained assets of the firm at the time the bank received them. The largest claim, known as the Henderson note, had been in the hands of Hooper, Haring & Co. to secure them against other drafts of Reid, Chadbourn & Co., and was probably handed to the bank by Harris, but there was no unpaid balance due Hooper, Haring & Co., and therefore that firm had no claim upon the note, and the bank could have received no title from

36—VOL. 6.

that source. It in fact derived its right to the assets from Chadbourn, and executed a receipt to him. These notes had never been divided between the members of the firm of Reid, Chadbourn & Co.; they were reported and considered as part of the uncollected assets of the firm in the settlement before referred to, and were apparently treated as if in the hands of the receiver. Though they were then in the hands of the bank, the fact was not so reported or disclosed by the record so far as appears. They constituted part of the uncollected assets of the firm which the receiver was directed to collect, and out of which he was to pay the debts, but the bank refused to surrender them.

Without setting forth the state of the accounts between Mrs. Reid and Chadbourn, it is sufficient to say, in view of those accounts and the subsequent payments made by the sale of Mrs. Reid's property on complainant's decree, that, as between the two members of the firm, an equitable adjustment requires that the balance of complainant's debts be paid out of these assets in exoneration of Reid's estate. These assets, as between the parties, should be thus applied, unless the bank has a superior right.

The case, then, is narrowed down to the simple question, whether the transfer by Chadbourn gave to the bank a right to hold the assets for Chadbourn's individual debt, in preference to the right or equity of Mrs. Reid. We hold that it did not.

We may concede that the creditors of the firm have no specific lien on the firm assets in general—

that the complainants can only work out their claim through the equity of the partners.    We may concede further, that a surviving partner may, for a valuable consideration, sell and transfer the assets of the firm and give to the purchaser a good title.    But pledging or assigning them by the surviving partner to secure a pre-existing debt of his own, gives to his assignee no higher right than he had himself.

As we have seen, these assets had not been divided but still remained uncollected assets of the firm.    It was the duty of Chadbourn to apply them to the debts of the firm, and Mrs. Reid has a clear equity to have this done, and this equity may be enforced at the instance of the complainants, and the bank having no right superior to Chadbourn, the decree in favor of complainant was correct.

It is conceded that the bank is entitled to satisfaction of so much of its debt as existed as the debt of Reid.

Decree affirmed with costs.